UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SADIEBOO, INC.,

      Plaintiff,

v.                                                                    Case No. 1:20-cv-212

MJ TOOLS CORP., et al.,                                Hon. Hala Y. Jarbou

      Defendants.

_____/

## **OPINION**

This is an action asserting trademark infringement, unfair competition, and unfair trade practices.  Plaintiff Sadieboo, Inc., which does business as The Grow Store, operates a retail business in Traverse City, Michigan, that sells garden supplies. It owns federal trademark registrations for THE GROW STORE and a logo incorporating those terms.  It sues Defendants MJ Tools Corp., Majic Trimmer Corp., Magic Trimmer Corp., and Iksander Manuel.  MJ Tools and its affiliates, Majic Trimmer and Magic Trimmer, allegedly run a retail gardening supplies business called The Indoor Grow Store.  Defendant Manuel is allegedly the sole shareholder and operator of the corporate defendants.  Before the Court is Defendants' motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 19).  For the reasons herein, the Court will grant the motion in part.

## **I. BACKGROUND**

According to the complaint, The Grow Store has operated a retail store in Traverse City, Michigan since April 2009.  It owns U.S. Trademark Registration 3,226,562 for a design logo incorporating the words "The Grow Store" and U.S. Trademark Registration 3,226,563 for the

mark THE GROW STORE.  These marks are registered for use on "retail garden supply stores and mail order garden supply services."  (Compl. ¶ 11, ECF No. 1.)

Defendants operate a website selling gardening supplies with a header that reads "THE INDOOR GROW STORE."  (*Id.* ¶ 13.)  In addition, Defendants operate seven retail stores in Michigan using the name THE INDOOR GROW STORE.  Those stores are located in Warren, Michigan Center, Battle Creek, Lansing, and Burton.  (*Id.* ¶ 5.)

In February 2017, MJ Tools filed a trademark application with the United States Patent and Trademark Office (USPTO) for the name THE INDOOR GROW STORE, for use with "[o]nline retail store services featuring gardening supplies and hydroponic equipment" and "[r]etail store services featuring gardening supplies and hydroponic equipment."  (*Id.* ¶ 18.)  The USPTO denied the application in May 2017 due to similarity to The Grow Store's registrations.

In September 2019, The Grow Store allegedly sent cease-and-desist letters to Defendants at its physical locations in Michigan.

In October 2019, Defendant Magic Trimmer Corp. filed a trademark application with the Michigan Department of Licensing and Regulatory Affairs to register THE INDOOR GROW STORE.  Magic Trimmer represented that it is the owner of the mark and that "none other has the right to use the mark in Michigan either in identical form or in a form which so nearly resembles the mark as to be likely to deceive or to be mistaken for the mark."  (*Id.* ¶ 25.)  The State of Michigan registered the mark for use on "retail sale services of hydroponic products, plant nutrients, and plant grower supplies."  (*Id.* ¶ 27.)

Despite The Grow Store's demands that Defendants stop using the name THE INDOOR GROW STORE, Defendants have continued to use that name in connection with their businesses.

The Grow Store contends Defendants' use of that name is likely to cause customer confusion and is, thus, an infringement of The Grow Store's trademark rights.

Defendants disagree.  They contend that The Grow Store's word mark is too generic to be a valid trademark and that Defendants' use of the name "The Indoor Grow Store" is not likely to cause customer confusion.  Accordingly, they argue that the complaint does not state a claim for trademark infringement under federal law.  In addition, Defendants contend that The Grow Store has not adequately pleaded the elements of state-law claims for common law trademark infringement, unfair competition, misappropriation, deceptive trade practices, or fraudulent procurement.  Furthermore, Defendants contend that the complaint does not state a claim against Manuel.  Thus, Defendants seek judgment on the pleadings.

## II. STANDARD

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973).  "Judgment on the pleadings is proper 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"  *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). "The 'complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'"  *Id.* (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).  The Court asks "whether the 'complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).

"[I]t is black-letter law that, with a few . . . exceptions, a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  The Court can consider documents presented by Defendants only if "'they are referred to in the Complaint and are central to the claims contained therein.'"  *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

## III. ANALYSIS

### A. Trademark Infringement (Lanham Act)

The Grow Store claims that Defendants infringed its federal trademark rights under the Lanham Act.  Defendants contend that The Grow Store's registered trademarks are invalid because they are generic and that, in any case, Defendants' use of the name The Indoor Grow Store does not infringe those marks.

### 1. Validity of the Trademarks

Defendants' argument about the validity of The Grow Store's trademarks is misplaced and unpersuasive.  It is misplaced because The Grow Store's trademark registrations provide "'prima facie evidence' of the mark[s'] validity." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2297 (2019) (citing 15 U.S.C. § 1115(a)).  To defeat the presumption of validity by showing that the marks are generic, Defendants must provide evidence that "the public perceives the term primarily as the designation of the article." *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012) (internal quotations marks and citations omitted).  A motion for judgment on the pleadings is not the proper place for presenting such evidence, unless Defendants can point to it in the pleadings or in other sources that the Court can consider at this stage.  Defendants have not, and cannot, do so.

4

Moreover, the Court is not persuaded that, on its face, "grow store" is a generic or merely descriptive designation for a store that sells garden supplies.  Unlike the phrases "plant store," "plumbing store," and "grocery store," the phrase "grow store" does not clearly indicate what one purchases from a business using that name.  A "grow" is not an object for purchase like a plant, plumbing, or groceries.  The term "grow" calls to mind anything capable of growing, including plants, animals, muscles, or even something abstract like wealth, knowledge, or personal development.  It does not obviously refer to garden supplies.  And trademark protection of the phrase "the grow store" does not prevent other garden-supply stores from describing the nature of their businesses.  In other words, "grow store" is suggestive, not generic.  It "requires the observer or listener to use imagination and perception to determine the nature of the goods."  *Induct-O-Matic v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984).  Thus, Defendants' invalidity argument is meritless at this stage.

### 2. Infringement of Trademarks

Next, Defendants contend that their use of "The Indoor Grow Store" does not infringe the trademarks at issue because there is no likelihood of customer confusion.  But as Defendants acknowledge, a likelihood of confusion is determined by examining multiple factors, including the following:  (1) the strength of the plaintiff's mark; (2) the relatedness of the parties' goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.  *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).  Weighing these factors will require an examination of evidence that is not available at this stage, and is not necessary to survive a motion for judgment on the pleadings.

Defendants attempt to obtain judgment in their favor through a cursory analysis of (1) the strength of THE GROW STORE mark, (2) the similarity of THE INDOOR GROW STORE to that mark, (3) the physical distance between Defendants' stores and The Grow Store's location in Traverse City, and (4) the lack of any allegations indicating actual customer confusion.  The weakness in this argument is obvious.  The Grow Store is not required to allege facts supporting all of the relevant factors in order to proceed.  At this stage, it is enough that its complaint alleges facts from which to reasonably infer a likelihood of customer confusion.  The facts permitting such an inference are the following: The Grow Store possesses trademark registrations that are presumptively valid; the parties' word marks are similar; the parties' products and services are similar; and the parties' businesses are located in the same state.[1]   These facts are sufficient to state a viable claim under the Lanham Act.  Evidence of actual confusion is not necessary at this stage of the case.  Moreover, the absence of such evidence "is rarely significant" at any stage.  *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997).

### B. Trademark Infringement (Common Law)

The Grow Store's "Third Claim for Relief" asserts trademark infringement under common law.  (Compl. ¶ 54.)  "In Michigan, there are three sources of trademark law: common law, the state Trademark Act, and the federal Lanham Act. A plaintiff may bring separate trademark-related claims under each body of law."  *Janet Travis, Inc. v. Preka Holdings, LLC*, 856 N.W.2d 206, 216 (Mich. Ct. App. 2014).

---

[1] The parties apparently agree that they both advertise their products online, but as to The Grow Store, that fact is not alleged in the complaint, so the Court does not consider it.  For the same reason, the Court does not consider Defendants' contention that The Grow Store did not "participate in the E-commerce marketplace at the time it filed its Complaint[.]" (Defs.' Br. 20, ECF No. 19.)  Any evidence supporting that assertion is not properly before the Court in a motion for judgment on the pleadings.

Defendants contend that the complaint fails to allege facts supporting a claim for common law trademark infringement because The Grow Store has not established a likelihood of confusion. However, the test for a likelihood of confusion under Michigan common law depends on an assessment of the same factors used by courts for trademark infringement under the Lanham Act. *See id.* at 221.  Accordingly, for the reasons discussed in the previous section, the complaint alleges sufficient facts to state a plausible claim for common law trademark infringement.

### C. Unfair Competition

The Grow Store also asserts a claim for unfair competition under Michigan common law. Irrespective of trademark protection, the use of a corporate name similar to that of a competitor to sell one's goods or services can constitute unfair competition, if such use could lead to customer confusion as to the source of such goods or services.  *See Schwannecke v. Genesee Coal & Ice Co.*, 247 N.W. 761, 762 (Mich. 1933).  The Grow Store's complaint states enough facts to support such a claim.

### D. Misappropriation

The Grow Store also asserts a claim for misappropriation of its goodwill.  The Court cannot find a Michigan case providing support for such a claim outside the law of trademark and unfair competition.  Moreover, some sources have concluded that such a claim would improperly circumvent the rules surrounding the law of trademark and unfair competition.  *See* Restatement (Third) of Unfair Competition § 38, cmt. b & Reporter's Note, cmt. c (1995) (noting that the "scope of protection afforded to trade symbols under traditional principles of trademark law, including the requirement of a likelihood of confusion . . . reflects a sensitive balancing of competing interests that should not be undermined by appeals to a general misappropriation rationale," and concluding that "[t]he better approach, and the one most likely to achieve an appropriate balance between the competing interests, does not recognize a residual common law tort of

7

misappropriation [of intangible trade values other than trade secrets].").  The Grow Store offers no response to Defendants' assertion that it does not state such a claim, and the Court discerns none. Accordingly, the Court will dismiss the misappropriation claim.

### E.  Deceptive Trade Practices, Mich. Comp. Laws § 445.903

Michigan's Consumer Protection Act (MCPA) provides that "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" is a deceptive trade practice.  Mich. Comp. Laws § 445.903(1)(A).  Trademark infringement can give rise to a claim under the MCPA, if the use of a confusingly similar business name would cause customers to believe that they were purchasing products from another source. *See APCO Oil Co. v. Knight Enters.*, No. 262536, 2005 WL 2679776, at *3 (Mich. Ct. App. Oct. 20, 2005).  Given the similarities between The Grow Store's name and the name of Defendants' business, the complaint states sufficient facts to support such a claim.

### F. Fraudulent Procurement, Mich. Comp. Laws § 429.41

Michigan law prohibits the procurement of a Michigan trademark by "knowingly making any false or fraudulent representation or declaration[.]"  Mich. Comp. Laws § 429.41.  The complaint alleges that Magic Trimmer violated this provision when filing a sworn declaration in support of its trademark application to the Michigan Department of Licensing and Regulatory Affairs that "none other has the right to use the mark [THE INDOOR GROW STORE] in Michigan either in identical form or in a form which so nearly resembles the mark as to be likely to deceive or to be mistaken for the mark." (Compl. ¶ 25.)  The complaint alleges that Magic Trimmer made this statement while aware of The Grow Store's trademark.  (*Id.* ¶¶ 24-26.)  In other words, The Grow Store contends that Defendant falsely represented that no one had the right to use THE INDOOR GROW STORE "in a form which so nearly resembles the mark as to be likely to deceive or to be mistaken for the mark," while aware that someone else had the right to use a "form" of

that mark, i.e., THE GROW STORE, which so closely resembles THE INDOOR GROW STORE that it is likely to deceive.

Defendants argue that The Grow Store has not pleaded this fraud claim with sufficient particularity.  The Court disagrees.  The Grow Store has identified the content of the allegedly fraudulent statement, the speaker, the time, the place, and an explanation sufficient to give notice to Defendants of the claim.  *See Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (requiring fraud claim to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

In addition, the Court disagrees with Defendants' contention that their name does not sufficiently resemble The Grow Store's trademark as to be likely to deceive.  There may be other grounds for dismissal of this claim, but lack of similarity between the marks is not one of them.

**G. Manuel as a Defendant**

Defendants argue that The Grow Store has not pleaded any facts from which to infer that Manuel may be liable as an individual.  In addition, Defendants contend that The Grow Store has not pleaded facts that would permit it to pierce the veil of the corporate entity defendants to reach their owners.

The complaint alleges sufficient facts from which to infer Manuel's personal involvement in the torts alleged, particularly his involvement in selection of THE INDOOR GROW STORE name for use by Defendants' businesses.  "It is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation."  *A&M Records, Inc. v. MVC Distrib. Corp.*, 574 F.2d 312, 315 (6th Cir. 1978); *accord Dep't of Agric. v. Appletree Mktg., LLC*, 779 N.W.2d 237, 246 (Mich. 2010).

According to the complaint, Manuel is the sole owner and operator of the corporate defendants.  He incorporated Majic Trimmer in the State of Michigan and filed a "Certificate of Assumed Name" for the entity.  (Compl. ¶¶ 15-16.)   The assumed name was "THE INDOOR GROW STORE PLUS." (*Id.* ¶ 16.)  Manuel also filed the Articles of Incorporation and Certificate of Assumed Name for MJ Tools.  (*Id.* ¶ 17.)   The assumed name was THE INDOOR GROW STORE.

In addition, when MJ Tools filed its application for trademark registration with the USPTO, Manuel signed the declaration asserting that MJ Tools had used THE INDOOR GROW STORE as a trademark since 2013.  Also, Manuel himself responded to The Grow Store's cease-and-desist letters, allegedly refusing to cease Defendants' use of that name.

These allegations may not be sufficient to *prove* that Manuel is personally liable, but they are sufficient to make that inference.  Thus, they are sufficient to survive Defendant's motion.

### H. Majic Trimmer as a Defendant

Finally, Defendants ask the Court to dismiss Majic Trimmer because they claim it is the same entity as Magic Trimmer.  Defendants point to a Certificate of Correction that Majic Trimmer ostensibly filed with the State of Michiagn to change its name to Magic Trimmer.  This evidence is outside the scope of consideration for a motion for judgment on the pleadings.  Consequently, the Court will not consider it and will not dismiss Majic Trimmer.

**IV. CONCLUSION**

For the reasons stated, the Court will grant Defendants' motion for judgment on the pleadings only as to The Grow Store's claim for misappropriation.  In all other respects, the motion will be denied.

An order will enter consistent with this Opinion.


Dated:   March 16, 2021                          /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 UNITED STATES DISTRICT JUDGE

11